# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERT GARY MOORE,** | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Action No. GJH-18-934 |
| **BISHOP,** *Warden of N.B.C.I.* | * | |
| **COMMISSIONER** *of N.B.C.I., (DOC)* | | |
| **CHAPLAIN LAMP,** | * | |
| **JOHN DOE,**[1] | | |
| **SERGEANT THOMAS,**[2] | * | |
| **Defendants.** | * | |

***

## MEMORANDUM OPINION

Plaintiff Robert Gary Moore is a self-represented litigant incarcerated at North Branch Correctional Institution (NBCI) in Cumberland, Maryland. In this civil rights action filed pursuant to 42 U.S.C. §1983, he alleges that Defendants violated his rights under the First and Fourteenth Amendments. ECF No. 3. Pending before the Court is a Motion to Dismiss or, Alternatively, for Summary Judgment filed by the Commissioner of Corrections, Chaplain Lamp, and Sgt. Thomas. ECF No. 14.[3] Despite being notified of his right to file an Opposition with exhibits and/or a declaration in support of his Complaint, Moore did not do so. ECF Nos. 15 & 16. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion, ECF No. 16, treated as a Motion for Summary Judgment, will be granted.

---

[1] Moore filed his Amended Complaint against Pastor of NBCI-John Doe. ECF No. 3. Service has been effected on Chaplain Lamp. John Doe will be dismissed.
[2] The Clerk shall change the spelling of Sergeant Thomas' last name on the docket.
[3] Counsel accepted service on behalf of Warden Bishop, *see* ECF Nos. 11 & 12, so it is unclear why Warden Bishop is not included in the dispositive motion, and this may reflect an inadvertent typographical error or clerical oversight. ECF No. 14

I.   BACKGROUND

In his initial Complaint, Moore alleges that he is Jewish, that he asked to be placed on a kosher diet, and that "the jail" destroyed his Administrative Remedy Procedure (ARP) requests. ECF No. 1 at 4. Along with the Complaint, Moore filed a copy of an ARP "appeal" he sent to the Commissioner of Correction, dated March 4, 2018, and stamped by the Inmate Grievance Office ("IGO") as received on March 8, 2018. In the appeal he complained that he had not received a response to his ARP of November 17, 2017, which complained he was denied kosher food. ECF No. 1 at 7. He also wrote "the pastor for NBCI" more than eight times between October 18, 2017 and February 20, 2018. ECF No. 1 at 8.

Moore amended the Complaint at the direction of the Court on April 19, 2019.[4] ECF Nos. 2 & 3. He alleged that between November 9, 2017 and February 9, 2018, he sent eight letters to the Chaplain asking for a kosher diet, and as of April 14, 2018, when he filed his Amended Complaint, he had not received a kosher diet. ECF No. 3 at 2. Moore also alleged that he submitted an ARP on November 9, 2017, and Sgt. Thomas destroyed it.[5] ECF No. 3 at 3. Moore did not identify the subject of the allegedly destroyed ARP. ECF No. 3 at 3. Moore alleges the "IGO denied my appeal. This Court already have [sic] the IGO decision." ECF No. 3 at 2; *see also* ECF 1-1 (March 8, 2018 letter from ARP coordinator returning March 8, 2018 ARP or letter because intent of filing could not be discerned). As relief, Moore asked to be placed on a kosher diet, awarded $20,000 from all four Defendants, and "to correct ARP procedures." ECF No. 1 at 3; ECF No. 3 at 2.

Sgt Thomas denies destroying ARP requests and declares that when an inmate gives him

---

[4] Moore did not file the supplement with a declaration. ECF No. 3.
[5] Moore did not name a correctional officer in the initial complaint. ECF No. 1. In his supplement, he alleged Sgt. Tompson destroyed his November 9, 2017 ARP. ECF No. 3 at 2. In subsequent correspondence to the Court he identified the officer as Sgt, Thomas. ECF No. 6.

an ARP request, he signs it, places the yellow copy in the mailbox for return to the inmate, and delivers the original white copy to the ARP Office. Thomas denies interfering with Moore's efforts to access the ARP process. Declaration of Sgt. William Thomas, ECF No. 14-7 ¶ 3.

Defendants explain that to participate in the Religious Program Diet, including the kosher diet, an inmate must complete a form approved by the Director of Programs and Services and submit it to the facility chaplain. An inmate is eligible to participate in religious diet program based on the inmate's recognized participation in a religious faith group listed under OPS.140.0002 D (5).[6] Declaration of Chaplain Kevin Lamp, ECF No. 14-3 ¶¶3, 8, 9, 10, 11.

Inmates designate and register their religious preference on a Religious Preference Registration form. Inmates may change their affiliation by submitting a new form with a new election. After registration, an inmate may receive passes to participate in religious activities. The applicant's designation of religious faith on the Religious Preference Registration form is considered when evaluating the Religious Diet Program application. Lamp Declaration ECF No. 14-3.

Moore registered as a Protestant in 2012. Declaration of John White, Correctional Case Manager Specialist II. ECF No. 14-4 at 2. On July 19, 2013, Moore submitted a Religious Preference Registration form to change his religion to "none" and selected the Master Cycle Menu for his meals. ECF No. 14-4 at 3–4. In November of 2017, Moore was placed on a 2400 calorie diet, which is a medical, not religious diet. Declaration of Parrish Kammauf, NBCI Dietary Manager, Decl. ECF No. 14-5 ¶4.

---

[6] Defendants did not file copies of the policy directive referenced by Chaplain Lamp in his declaration. The referenced OPS.140.0002 can, however, be found online at: http://itcd.dpscs.state.md.us/PIA/. OPS.140.0002 is entitled "Religious Services Manual" and provides that: "[t]he Kosher diet that shall be offered to an offender who has designated the offender's religions faith as one of the following faith groups: (a) Jewish; (b) House of Yahweh; (c) Assemblies of Yahweh; (d) Messianic Jewish; (e) Hebrew Israelites; or (f) other recognized religions that have the same basic tenets that require the Kosher diet." OPS.140.0002.10.B.2.

Defendants assert that when Moore initiated this lawsuit, he had not submitted the form necessary to apply to participate in the religious diet program and there was no record of a Religious Preference Registration form to change his 2013 designation. Lamp Decl. ECF No. 14-3 ¶¶ 6, 12–13; Kammauf Decl. ECF No. 14-5 ¶ 4. Since then, Moore has been provided the requisite forms to change his religious preference and apply to the Religious Diet Program. In August of 2018, Moore filed to designate Judaism as his religious preference. Lamp Decl. ECF No. 14-3 ¶ 14. If Moore is approved for a kosher diet, he will need to provide the Medical Department with a Release of Responsibility to remove him from the medical diet and place him on the kosher diet. Kammauf Decl. ECF No. 14-5 ¶ 5.

Defendants maintain that Moore has submitted numerous ARP requests, some of which concern his diet, but none alleged he was denied kosher meals. Declaration of John White, Correctional Case Management Specialist, II, ECF No. 14-4 at 1, 5–9; Declaration of Samiyah Hassan, Inmate Grievance Office (IGO), ECF No. 14-6 at 1 ¶2.

## II. STANDARD OF REVIEW

Defendants style their motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the facts in the complaint or "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, Rule 12(d) requires courts to treat a motion to dismiss as a motion for summary judgment when the court considers matter outside the pleadings. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Consistent with this rule, the nonmoving party must have some indication that the court will treat the motion

to dismiss as a motion for summary judgment and "must be afforded a reasonable opportunity for discovery" if it is essential to the nonmoving party's ability to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

It is obvious when the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as is the case here, that the Court may treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.2d 253, 260–61 (4th Cir.1998). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Here, Plaintiff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe Defendant's motion as a Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

III. **DISCUSSION**

Defendants argue they are entitled to dismissal or summary judgment in their favor because A) they have Eleventh Amendment immunity; B) the doctrine of respondeat superior is inapplicable;[7] C) Moore failed to exhaust administrative remedies; and D) Moore failed to state a claim of interference with his religion.

**A. Eleventh Amendment**

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars individuals from bringing suit against a State, without the State's consent or a valid Congressional abrogation of sovereign immunity. *See Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 35 (2012); *Board of Trustees of Univ. of Alabama v. Garett*, 531 U.S. 356, 363 (2001); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996); *Pennhurst State School and Hospital v Halderman*, 465 U.S. 89, 100 (1984).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts.

---

[7] Respondeat superior is a legal doctrine that provides an employer is liable in certain cases for the wrongful acts of his employee, and a principal for those of his agent. *See Black's Law Dictionary* (8th ed. 2004).

*See* Md. Code, State Gov't. Art., § 12–201(a). But it has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court.

There are several exceptions to the Eleventh Amendment bar. *See, e.g., Equity In Athletics, Inc. v. Department of Education*, 639 F.3d 91, 107 n. 13 (4th Cir. 2011) (listing exceptions). For example, the Eleventh Amendment does not prevent private individuals from suing State officials for injunctive or declaratory relief for ongoing violations of federal law. However, there is no evidence in this case of ongoing unconstitutional conduct by Defendants warranting injunctive or declaratory relief in Moore's favor. Defendants are therefore entitled to dismissal of the claims raised against them in their official capacities.

**B. Respondeat Superior**

Section 1983 imposes liability on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based on the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 (1978); *West*, 815 F.2d at 996 (4th Cir. 1987), *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (requiring an affirmative showing that the official charged acted personally in the deprivation of the plaintiff's rights). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Moore does not allege that the Warden or Commissioner personally denied him access to a religious diet or interfered with processing his ARP requests.

To hold the Warden or Commissioner culpable under a theory of supervisory liability, Moore must show (1) the supervisor had actual or constructive knowledge that his subordinate

7

was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). Moore does not allege the Warden or Commissioner had actual or constructive knowledge of allegedly wrongful conduct regarding the issue here, or that the Warden or Commissioner's inaction caused injury to him. Rather, the sole basis for Moore's claims against the Warden and the Commissioner is the responsibilities associated with their job title, otherwise known as respondeat superior. As noted, a theory of respondeat superior is not applicable in a civil rights complaint filed under 42 U.S.C. § 1983. For these reasons, the Warden and Commissioner are entitled to summary judgment in their favor.

### C. Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust the administrative remedies available to them before bringing any action related to prison conditions. 42 U.S.C. § 1997e(a). The purpose of exhaustion includes "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Prisoners must pursue administrative grievances until they receive a final determination of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 523, 530 (D. Md. 2003); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997).[8]

---

[8] In Maryland, a state inmate must first file an ARP request with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs.

An inmate must complete the prison's internal appeals process before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30.

Exhaustion generally may not be excused unless an administrative procedure is not available. *See Ross* v. *Blake,* 136 S.Ct. 1850, 1858 (2016). An administrative remedy is unavailable "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). For example, an administrative procedure is rendered unavailable when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S.Ct. at 1859–60.

The undisputed record demonstrates that Moore never filed an ARP concerning denials of a kosher meal or interference with the ARP process, prior to filing this complaint. Sgt. Thomas' declaration directly disputes Moore's allegation that he destroyed his ARP and Moore has not responded with evidence to the contrary. Notably, Moore did not specify the subject of the purportedly destroyed ARP. Moore's numerous ARP filings, none of which concerned kosher meals, belie his assertion that he was hindered from using the ARP process or that the process was so opaque as to be unavailable to him. ECF No. 14-4 at 24-25. Even if Moore wrote to the pastor more than eight times between October 18, 2017 and February 20, 2018, as he claims, his letters were not submitted through the ARP process. ECF No. 1 at 8. Moore did not file an opposition to Defendants' dispositive motion and does not refute Defendants' exhibits showing

---

(COMAR) § 12.07.01.04-05.A (2017). If the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210;COMAR §§ 12.07.01.03, 12.07.01.05.B. An Inmate may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

lack of exhaustion. Thus, based on the undisputed record before the Court, Moore has failed to comply with mandatory exhaustion requirements entitling Defendants to dismissal of the claims without prejudice. Because the record evidence also demonstrates that Defendants did not violate Moore's First Amendment rights, Defendants are also entitled to summary judgment in their favor.

**D. Failure to State a Claim**

**1. First Amendment**

Moore claims he has been denied kosher meals in violation of his First Amendment rights. The Free Exercise Clause of the First Amendment applies to the States by virtue of the Fourteenth Amendment. *See Employment Division v. Smith,* 494 U.S. 872, 876–77 (1990). It provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. Amend. I. However, State action only violates a prisoner's constitutional rights if it burdens the prisoner's religious rights and is not reasonably related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution. *See Turner,* 482 U.S. at 89-91. The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In

addition, this Court must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

Another consideration is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA).[9] The act provides in part:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

"[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015). Prison authorities are permitted to test the sincerity of a religious belief that is being accommodated. *See Cutter v. Wilkinson*, 544 U.S. 709, 725, n.13 (2005) ("prison officials may appropriately question whether a prisoner's religiosity . . . is authentic."); *see also Lovelace v. Lee*, 472 F.3d 174, 188 (4th Cir. 2006).

Moore was required to submit forms to indicate his religious preference as Jewish and to apply to participate in the religious diet program. He does not assert that completing the necessary forms was a substantial burden on his free exercise of religion. Courts have recognized that requiring a prisoner to complete a standard prison form to obtain a special religious diet does not violate the right to free exercise of religion. *See e.g. Resnick v Adams,* 348 F.3d 763, 771 (9th Cir. 2003); *Yaacov v. Collins*, 649 F. Supp. 679, (N.D. OH. 2009) (restricting kosher meals to registered inmates reasonably related to legitimate penological interests). Additionally, Moore's

---

[9] Moore's Complaint did not raise a RLUIPA claim. It is considered here in order to fully evaluate his religious claim.

medical diet needs required him to sign a release of responsibility before he could be placed on the diet. Defendants' exhibits show that at the time Moore filed this lawsuit, he had not complied with either requirement. Importantly, Moore does not refute Defendants' assertions. The prerequisite steps to receive a religious diet do not amount to a substantial and unlawful burden on religious practice; rather, they serve a legitimate governmental interest in the orderly administration of a program that allows prisons to accommodate the religious dietary needs of inmates. Moore has failed to raise a genuine issue of material fact as to whether his rights under the First Amendment or RLUIPA were violated, and Defendants are entitled to summary judgment.

### 2. Equal Protection

To the extent Moore intends to assert that his rights under the Equal Protection Clause applied through the Fourteenth Amendment have been violated, ECF Nos. 1 & 1-2, he provides no explanation to support his claims. To state a claim for relief under the Equal Protection Clause, a plaintiff must show that he "has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001). Because the complaint presents no such allegations, there are no grounds for an equal protection claim.

### IV. CONCLUSION

For these reasons, the Court will grant Defendants' Motion for Summary Judgment. A separate Order follows.

Dated: <u>March 25, 2019</u>　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　United States District Judge